IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAMIEN T. ADDISON, | CIVIL DIVISION |
| Plaintiff, | Case No.  2:21-cv-4 |
| v. | |
| ST. MORITZ BUILDING SERVICES, | |
| Defendant. | |

**COMPLAINT AND JURY DEMAND**

A.   *Preliminary Statement*

1. The plaintiff Damien Addison brings this action under the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12101 *et seq.,* to redress violations of his right to be free from employment discrimination based upon his disability.  Because of the violations described herein, this Court is also empowered to exercise pendant jurisdiction pursuant to the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.*  A jury trial is demanded.

B.   *Jurisdiction*

2. The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 12117(a), 28 U.S.C. § 1331 and under the doctrine of pendant jurisdiction.

3. On or about July 9, 2020 the plaintiff filed a timely charge alleging discrimination with the Equal Employment Opportunity Commission ("EEOC"), docketed at 533-2020-01447. This charge was simultaneously cross-filed with the Pennsylvania Human Relations Commission.

4. The EEOC issued a Notice of Right to Sue dated December 7, 2020.

5. The plaintiff filed this complaint within 90 days of receipt of the Notice of Right to Sue.

C.   *The parties*

6.   The plaintiff Damien T. Addison is an adult individual who resides at 607 Warrington Avenue, Pittsburgh, PA 15210 (Allegheny County).

7.   The defendant, St. Moritz Building Services ("St. Moritz" or the company), is an entity doing business in the Commonwealth of Pennsylvania, and, specifically, in this district. The defendant maintains a place of business at 4616 Clairton Blvd, Suite 2114, Pittsburgh, PA 15236 (Allegheny County).

8.   At all times material, the defendant employed more than fifteen employees.

9.   The defendant was the plaintiff's employer and is an employer within the meaning of the ADA, 42 U.S.C. § 12111(5).

D.   **_Factual Background_**

10.   The plaintiff was hired by St. Moritz on December 30, 2019 as a night cleaner. He remained in that position until January 9, 2020 when his employment was terminated.

11.   St. Moritz is a business that, among other things, provides corporate cleaning services. The company is based in Pittsburgh, PA.

12.   The plaintiff's duties as a night cleaner included vacuuming, emptying garbage, dusting and other cleaning tasks.

13.   The plaintiff has a disability as defined by the Americans with Disabilities Act ("ADA") and/or was perceived by the employer as having a disability. Specifically, in approximately January 2017, he was diagnosed with sarcoidosis, an inflammatory disease that affects multiple organs in the body, but mostly the lungs and lymph nodes, physical impairments that substantially limit one or more of the major life activities of the plaintiff.

14. During his employment, the plaintiff was able to perform all of the essential functions of his job, either with no accommodations or with reasonable accommodations.

15. The plaintiff disclosed his disability in his employment application that he gave to a human resources employee with whom he initially interviewed and/or during the initial interview. She asked him some questions about his disability and he explained that it would not interfere with his ability to do his job functions. The plaintiff was hired and was assigned to work in various buildings serviced by the company as a floater.

16. After about a week or so on the job, the plaintiff was assigned to work in the K&L Gates building in downtown Pittsburgh.

17. St. Moritz maintains an "office" in the K&L Gates building, which is a smallish room in a supply area. This office also has a time clock, which is used by the company's employees to punch in and out.

18. On or about January 7, 2020, Smith met with the plaintiff in the office and told him that there was more paperwork for him to fill out. She told him that has was going to be permanently assigned to work in the K&L Gates building and that he would no longer be a floater.

19. A couple of minutes later, Tom Jordan, the St. Moritz' Building Manager for this location, introduced himself to the plaintiff and told him that he would be his manager. Jordan also said, "Bonita [Smith] brags about you; she says you're doing good work." He then said, "I went over your application. I see that you have a disease; can you explain it to me?"

20. The plaintiff told Jordan that sacroidosis is an autoimmune disease that has no cure. Jordan asked, "Is this something that you would have to go to the hospital for?" The plaintiff explained that, during severe flair ups, he may have to go the hospital for time to time,

but that did not happen frequently. Jordan then asked if the plaintiff would be able to do his job and the plaintiff responded in the affirmative.

21. About thirty minutes later, Smith gave the plaintiff the paperwork regarding the new job assignment. The plaintiff completed it and returned it to her.

22. The plaintiff reported to work the next day, January 8, 2020, and worked his shift without incident.

23. On January 9, 2020, Jordan called the plaintiff using Smith's phone. He said, "Don't come to work tonight; it's not going to work out." The plaintiff was stunned. Up until this point, he knew that he had been doing an excellent job for the company and nothing had happened that called his ability to do the job into question.

24. Jordan responded, "It's not going to work out because of your disease. We need someone more reliable to do the job down here." The plaintiff tried to point out that he had been reliable, that he showed up for work on time with no problems and that he was doing everything that had been asked of him, but Jordan did not want to debate the issue. He made it clear that the plaintiff's job was being terminated effective immediately.

25. At some point after the termination, the plaintiff learned that Jordan had changed the reason for his termination, accusing him of stealing. However, Jordan never came forward with any evidence whatsoever that the plaintiff had done anything like that and did not indicate that as a reason during the telephone call advising him of termination. Further, the plaintiff did not steal anything. This "reason" was just a post hoc pretext to cover up the real reason for the plaintiff's termination, namely, that he has a disability.

26. The reason given for the plaintiff's termination was a pretext; the real reason for his termination was because of his disability.

## FIRST CAUSE OF ACTION

27. The plaintiff has a disability and thus is protected against discrimination under the ADA.

28. The plaintiff was qualified for his position.

29. The plaintiff was able to perform his position with or without a reasonable accommodation.

30. Despite his qualifications, the plaintiff was terminated. The reasons given for discharge were a pretext.

31. At all ties relevant, the defendant knew of the plaintiff's disability and/or regarded the plaintiff to be a disabled individual.

32. The defendant's violation of the ADA was committed with intentional or reckless disregard for the plaintiff's federally protected right to work in an environment free of discrimination.

## SECOND CAUSE OF ACTION

33. The preceding paragraphs are incorporated herein by reference as if they were set forth at length.

34. The defendant terminated the plaintiff's employment and otherwise discriminated against him in the terms and conditions of his employment because of his disability, in violation of the PHRA, 43 Pa. C.S. § 951 *et seq.*

WHEREFORE, the plaintiff respectfully requests judgment be entered in his favor and against the defendant and that the defendant be required to provide all appropriate remedies under the ADA and the PHRA, including back pay, front pay, compensatory damages, punitive damages and attorney's fees and costs.

Respectfully submitted,

*/s/ Michael J. Bruzzese*

Michael J. Bruzzese
Pa. I.D. No. 63306
2315 Koppers Building
436 Seventh Avenue
Pittsburgh, PA 15219
(412) 281-8676
Counsel for the plaintiff

Dated:  January 3, 2021